*38*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-**

United States District Court
Southern District of Texas
ENTERED

FEB 1 9 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| MIRIAM MARTINEZ, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-01-095 |
| LOS FRESNOS CONSOLIDATED | § | |
| INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the Court are Defendant Los Fresnos Consolidated Independent School District's Motion for Summary Judgment (Docket No. 24) and Plaintiff Miriam Martinez's response to the summary judgment motion (Docket No. 30).

### BACKGROUND FACTS

Miriam Martinez ("Martinez") was employed as a school bus driver for the Los Fresnos Consolidated Independent School District ("LFCISD") for 11 years. (Martinez Deposition, p. 8). While employed by LFCISD, Martinez was a member of the local union that represented school district employees who worked in the maintenance, cafeteria, and transportation departments. (Martinez Deposition, pp. 14-17). She regularly attended union meetings and often voiced her concerns to her superiors regarding the number of hours that employees were scheduled to work and the manner in which trips and buses were assigned to school bus drivers. (Martinez Deposition, pp. 16-17, 31-33). Around November 1998, Martinez and other co-workers discovered that the transportation director, Guadalupe Gonzalez, was cutting the hours of certain school bus employees,

1

including Martinez, and redistributing those hours to employees with less seniority. (Martinez Deposition, pp. 18-20). Martinez contacted the local news station, Channel 4, to cast media attention on this matter. (Martinez Deposition, p. 19). At about the same time, Martinez drafted a petition also addressing this issue and other concerns that was signed by approximately twenty-three employees. (Martinez Deposition, pp. 24-25). She had also confronted Gonzalez about hosting a Thanksgiving dinner for all the school bus drivers after she discovered that he only planned to invite a select few. Martinez contends that this angered Gonzalez, but he hosted a Thanksgiving dinner for everyone nonetheless. Finally, Martinez wrote another letter to the school district, complaining about the time of day that employees were instructed to pick up their paychecks. At no point in time was Martinez prohibited or prevented from voicing her opinions or complaints. (Martinez Deposition, p. 35).

On May 1, 1999, Martinez and Rosalinda Rios were the bus drivers designated to drive band students and the school's band directors, including Frank Cisneros and Bill Bennett, to a band competition held in Corpus Christi, Texas. (Martinez Deposition, p. 40; Defendant's Motion for Summary Judgment, Exhibit C). Remigio Garza, another chaperone on the trip, drove a truck, trailing closely behind the buses. (Martinez Deposition, p. 40; Defendant's Motion for Summary Judgment, Exhibit G). En route to Corpus Christi, the buses and the truck stopped at a Whataburger restaurant. (Martinez Deposition, p. 41; Defendant's Motion for Summary Judgment, Exhibit C). When they departed, Martinez attempted to maneuver her bus through a tight entrance. (Martinez Deposition, p. 41-44; Defendant's Motion for Summary Judgment, Exhibit C). She reversed and hit a garbage bin, causing one of the bus's windows to break and shatter into small pieces. (Martinez Deposition, p. 44; Defendant's Motion for Summary Judgment, Exhibit C). Martinez then drove

straight across an open field and onto the highway. (Defendant's Motion for Summary Judgment, Exhibits C, G). At some point during the drive, Martinez began swaying the bus onto the shoulder and toward the grassy median. (Martinez Deposition, p. 41; Defendant's Motion for Summary Judgment, Exhibits C, G). Cisneros, who was a passenger in Martinez's bus, asked Martinez to slow down and to get back onto the driving lane. (Defendant's Motion for Summary Judgment, Exhibit F). According to Cisneros's witness statement, Martinez did not respond and "continued to drive between the shoulder and the right lane." (Defendant's Motion for Summary Judgment, Exhibit F). After Martinez finally corrected her driving, she was asked what was wrong, and she responded that she had a problem with her neck. (Defendant's Motion for Summary Judgment, Exhibit F).

On the return trip to Los Fresnos, near Kingsville, Martinez was driving on the left lane of the highway, passing a vehicle on the right lane. (Martinez Deposition, p. 45; Defendant's Motion for Summary Judgment, Exhibit F). A gust of wind veered the bus toward the right lane, and Bennett, who was a passenger in Martinez's bus, requested that Martinez relinquish control of the bus and allow him to drive. (Martinez Deposition, p. 45-47; Defendant's Motion for Summary Judgment, Exhibit F). Martinez refused and insisted that she was all right. (Martinez Deposition, p. 47; Defendant's Motion for Summary Judgment, Exhibit F). Sometime thereafter, the group stopped at a convenience store. (Martinez Deposition, p. 46-47; Defendant's Motion for Summary Judgment, Exhibits F, G). Bennett pulled Garza aside, who had been driving the truck behind Martinez's bus, to discuss Martinez's driving. (Defendant's Motion for Summary Judgment, Exhibit G). They both agreed that Martinez was driving poorly. (Defendant's Motion for Summary Judgment, Exhibit G). They attempted to contact Gonzalez to report the incidents but were unsuccessful. (Defendant's Motion for Summary Judgment, Exhibit G).

3

Saul Bazaldu, Martinez's immediate supervisor, conducted an investigation of the Corpus Christi trip incidents. (Defendant's Motion for Summary Judgment, Exhibit C). Based on the witnesses' statements, Gonzalez, the transportation director, made the recommendation to Fidela Hinojosa, the Personnel Director of LFCISD, to terminate Martinez. (Defendant's Motion for Summary Judgment, Exhibit B). In a memorandum dated May 13, 1999, Hinojosa informed Martinez that she was terminated as a result of the "incidents that occurred Saturday, May 1, 1999, during [the] student trip to Corpus Christi." (Defendant's Motion for Summary Judgment, Exhibit A). Martinez's termination notice informed her of her right to appeal. (Defendant's Motion for Summary Judgment, Exhibit A). Martinez invoked that right but was unsuccessful in regaining her position. The final decision to terminate Martinez rested on Hinojosa, the superintendent, and ultimately the school board. She filed this action against LFCISD under 42 U.S.C. § 1983, alleging that her termination was the result of her union activities and her exercise of free speech on matters of public concern. LFCISD now seeks summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment evidence is viewed in the light most favorable to the nonmovant. *See Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456 (1992). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986).

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). Once the movant

4

establishes the absence of a factual dispute, the burden shifts to the nonmovant to show that summary judgment is inappropriate. The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *See Anderson*, 477 U.S. at 256. Instead, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *See id.* at 242. An issue is material if it involves a fact that might affect the outcome of the suit under governing law. *See Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). This evidence must do more than create a metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *See Anderson*, 477 U.S. at 256. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.* at 248.

## Discussion

The First Amendment of the United States Constitution protects speech by an employee commenting as a citizen on a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 143 (1983). Thus, a State may not discharge an employee on a basis that infringes upon the employee's constitutionally protected interest in freedom of speech. *See Rankin v. McPherson*, 483 U.S. 378, 383 (1987). To prove a First Amendment retaliation claim, the plaintiff must show that (1) she suffered an "adverse employment decision;" (2) her speech involved "a matter of public concern;" (3) her "interest in commenting on matters of public concern [outweighs] the Defendant's interest in promoting efficiency;" and (4) her speech motivated the adverse employment decision. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). The plaintiff must show that she

engaged in protected conduct and that it was a motivating factor in her discharge. *See id.* The burden then shifts to the defendant to show by a preponderance of the evidence that the employee would have nonetheless been discharged in the absence of the protected conduct. *See id.*

Martinez alleges that (1) her involvement in the union, (2) her written letters and petitions to her supervisor regarding the time to pick up paychecks and the scheduling of work hours and bus trips, (3) her vocal opposition to the reduction of work hours, (4) her suggestion to her supervisor that all school bus employees be invited to a Thanksgiving dinner, and (5) her marshaling the local media to cover a story regarding the employee's work hours constituted speech on a matter of public concern.

Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Connick*, 461 U.S. at 147-48.

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark — and certainly every criticism directed at a public official — would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 149. Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick*, 461 U.S. at 146). Generally, speech pertaining to internal personnel disputes and working conditions do not involve public concern. *See id.* (relying on *Connick*, 461 U.S. at 148). "If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature." *Branton*, 272 F.3d at 740 (quoting *Kennedy v. Tangipahoa Parish Library Bd. of Control*,

224 F.3d 359, 372 (5th Cir. 2000)).

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick*, 461 U.S. at 147.

Martinez's speech is a far cry from matters of public concern. Her speech dealt with the scheduled hours of employees, the time at which checks were distributed, and the assignment of trips among employees. Her complaints did not relate to any political or social matter or any other concern pertaining to the community; she was simply disgruntled about her working conditions and the manner in which her supervisor was distributing work hours and scheduling bus trips. Martinez attempts to paint a portrait of a school district that terminated her because she often voiced her opinions regarding the alleged unequal treatment of union and non-union employees; however, she has no reasonable basis for this allegation, and it is further negated by her own testimony that *both* union and non-union employees received partial treatment. (Martinez Deposition, pp. 63-64).

Further, Martinez cannot show that her speech was the substantial or motivating factor in her termination. Martinez admitted that she vocalized her discontentment regarding work hours and scheduled bus trips about six months before her termination; she also conceded that no one ever told her to stop voicing her opinions or discontinue her association with the union. (Martinez Deposition, pp. 19, 35, 81-82). Martinez admitted that Gonzalez never interfered with her ability to do her job, never picked on her, and never said anything directly to her about anything. (Martinez Deposition, pp. 62, 82). There is no evidence that Gonzalez threatened her, reduced her pay, demoted her, singled her out or attempted to intimidate her. She also acknowledged that Gonzalez could only

make the recommendation to fire her, and the final decision to terminate her was made by Fidela Hinojosa, the personnel director of LFCISD. (Martinez Deposition, p. 84). According to Martinez, Hinojosa never retaliated against her, yelled at her, or threatened her. (Martinez Deposition, pp. 28, 76, 80-81). Martinez has failed to provide any evidence to suggest that Hinojosa had knowledge of Gonzalez's allegedly illegal motive to terminate her. *See Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997) (holding that termination was not in retaliation for plaintiff's speech where there was no evidence that person terminating plaintiff had knowledge of the speech). Moreover, there is no evidence that the superintendent or the school board had knowledge of any illegal motive or that they themselves had ill-motive to terminate Martinez. Martinez's section 1983 claim fails.

DONE at Brownsville, Texas, this 15th day of February, 2002.

John Wm. Black
United States Magistrate Judge